UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

AL FRANKLIN,                        :
                                    : NO. 1:03-CV-00011
        Plaintiff,                  :
                                    :
                                    :
    v.                              :
                                    : **OPINION AND ORDER**
                                    :
MIAMI UNIVERSITY et al.,            :
                                    :
        Defendants.                 :
                                    :


        This matter is before the Court on Defendants' Motion for
Summary Judgment (doc. 16), Plaintiff's Response (doc. 27), and
Defendants' Reply (doc. 29).

**I.  BACKGROUND**

        On January 6, 2003, Plaintiff Al Franklin ("Franklin")
filed this action against his former employer Miami University and
a  number  of  its  employees  and  officials  (collectively,
"Defendants"), raising numerous federal and state constitutional
and statutory claims (doc. 1).  Plaintiff alleges that Defendants
had him arrested without probable cause, and that such arrest led
to the improper suspension and termination of his employment (Id.).
Plaintiff amended his Complaint on May 30, 2003, to add a claim for
retaliation (doc. 7).  In addition to his civil rights claims
pursuant to 42 U.S.C. § 1983, Plaintiff advances a number of state
tort claims against the Defendants, including claims for malicious
prosecution, abuse of process, libel, slander per se, wrongful

discharge, negligent infliction of emotional distress, and wrongful arrest (Id.). Plaintiff seeks compensatory damages, punitive damages of $1,000,000, and attorney's fees and costs (Id.).

On October 24, 2003, Defendants filed their motion for summary judgment, arguing that Plaintiff's arrest was indeed supported by probable cause, that Plaintiff fails to show any viable constitutional or state law violations, and that they are entitled to judgment as a matter of law (doc. 16). Plaintiff responded that there are numerous material issues of fact that preclude the grant of summary judgment (doc. 27). As Defendants filed their reply (doc. 29), this matter is ripe for adjudication. For the following reasons, Defendants' motion will be denied in part and granted in part.

## II. APPLICABLE LEGAL STANDARD

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992)(per

curiam).    In  reviewing  the  instant  motion,  "this  Court  must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)(internal quotation marks omitted).

The  process  of  moving  for  and  evaluating  a  motion  for summary judgment and the respective burdens it imposes upon the movant  and  the  non-movant  are  well  settled.    First,  "a  party seeking summary judgment. . . bears the initial responsibility of informing  the  district  court  of  the  basis  for  its  motion,  and identifying  those  portions  of  [the  record]  which  it  believes demonstrate the absence of a genuine issue of  material fact[.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).   The movant may do so by merely  identifying  that  the  non-moving  party  lacks  evidence  to support an essential element of its case. See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced  with  such  a  motion,  the  non-movant,  after completion of sufficient discovery, must submit evidence in support

-3-

of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact.  See Celotex, 477 U.S. 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989).  Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits.  Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-40 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough

-4-

specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir.1989)(internal quotation marks omitted).  In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment.  See McDonald v. Union Camp Corp., 898 F .2d 1155, 1162 (6th Cir.1990).  The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962).  Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion.  See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute.  See Matsushita, 475 U.S. at 587.  The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate.  See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-55 (6th Cir. 1991).

## III. RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The facts relevant to the determination of Defendants' motion have been drawn from the Complaint, the various filings in

-5-

this matter and the evidentiary submissions provided by the parties. The facts of this case are relatively straightforward; furthermore, many of the facts are not in serious dispute. They may be fairly summarized as follows.

Franklin was first hired by Miami University on July 31, 1997; his position as a "building services worker" required him to perform various tasks, including cleaning restrooms and assisting with kitchen duties. His time at Miami University ("Miami"), as represented by his employment record, had not been without incident; the Defendants submit evidence that he had "a lengthy history of disciplinary" problems during his tenure (doc. 16). Franklin, for his part, had previously initiated unspecified legal action in this Court against Miami and one of its supervisors, Roberta Gayhart (Case No. C-1-01-220), although the case was ultimately dismissed.

The incidents giving rise to Plaintiff's Complaint occurred on February 28, 2002, when Franklin, was cleaning restrooms in Miami's Harris Dining Hall as part of his normal duties. Plaintiff states that "he preferred that people not use [a] restroom while he was trying to clean it" and he would routinely place a sign on the door asking people to use another restroom while he was working (doc. 27). Plaintiff claims to have "often" made specific requests of two of his co-workers, Defendant Johnny Johnston ("Johnston") and Defendant Freeman Workman

-6-

("Workman") to respect his wishes and use another restroom (doc. 7).   Apparently, Johnston and Workman sometimes ignored his requests, as Johnston did on this day.   Plaintiff verbally asked Johnston to respect his wishes, but Johnston used the restroom anyway (doc. 27).   Plaintiff left the restroom and went to discuss the situation with Defendant Veronica Collopy ("Collopy"), the Executive Manager of the Harris Dining Hall.[1]   Collopy avers she was attempting to explain to Franklin that it was standard practice to allow access to the bathroom while they were being cleaned, but Plaintiff would not accept her explanation, and became more and more agitated (doc. 16).   While they were discussing the matter, Johnston interjected "that he was a grown man and didn't need Mr. Franklin's permission to use the restroom" (doc. 27).   Collopy contends that Franklin began following Johnston, yelling, "If you got a problem, here I am" (doc. 16).   Franklin indicates he then "approached Defendant Johnston and proceeded to have a discussion

---

[1] In her affidavit, Collopy indicates that Franklin had become an increasing concern among his co-workers and supervisory staff.   In addition to failing to perform tasks assigned him, she claims that he "provoked confrontations and disturbances in the work place" and that he was engaged in hostile, "childish" and "extremely erratic" behavior with others and "Ms. Gayhart" (doc. 16).   She declares that there "was a generalized concern that Al would hurt someone...shared by managers, co-workers, and students alike" (Id.).   With respect to cleaning the restrooms, she claims that he was not authorized to post signs indicating that restrooms should not be used while he was cleaning them; "[i]n fact," she avers, "it was standard practice to allow access to the bathrooms while they were being cleaned" (Id.).   In his affidavit, however, Franklin states that he had been told "in the past" by an unspecified "manager" to put up the sign (doc. 27).

with him;" Collopy was following approximately ten to fifteen feet behind (doc. 27).

The "discussion" between the Plaintiff and Johnston escalated. Johnston claims that Franklin threatened him by "getting in [his] face and saying...I should knock you the fuck out" (doc. 16). He claims that Franklin has a "hot temper" and that he had threatened co-workers "many times;" believing Franklin was capable of violence, Johnston claims that he was "fearful for [his] safety" (Id.).[2] Collopy supports Johnston's statement, remembering it as "I ought to knock you the fuck out" (Id.). Collopy claims she was gravely concerned that Plaintiff would harm Johnston, as Plaintiff then allegedly moved toward Johnston in a threatening manner, "with clenched fists at his side," but opines that her presence likely prevented further escalation (Id.). Collopy claims she instructed Franklin to return to work, and that he – after repeated demands – eventually did so (Id.). Johnston then "immediately called the Miami University Police Department, reported the incident, and requested police assistance" (Id.). Collopy called her boss, William Moloney, the Director of Student Dining, to report the incident (Id.). At his direction, Collopy then also reported the incident to the Miami University Police

---

[2] His written statement accompanying the incident provides additional details, including that, upon entering the restroom, he saw Franklin reading a newspaper rather than cleaning. He also claims that he witnessed Franklin lose his temper with his supervisor Bobbi Gayhart, on several occasions.

Department ("MUPD")(Id.).

In contrast, Franklin claims that he was "goaded into making idle threat [sic]" toward Johnston and that, "afterwards,... Johnston would not let Plaintiff continue with his conversation" (doc. 7). Viewed objectively, however, his account of the event does not differ significantly. He admits that Johnston made him angry by interrupting his conversation but claims that Johnston "was aware...[he] was simply verbalizing his anger" (doc. 27). He claims that he told Johnston he "could knock the fuck out of" him, but that he "didn't tell him [he] was going to and...didn't physically threaten him in any fashion" (doc. 16).

Defendant MUPD Officer Donald Fox ("Fox") was dispatched to the scene, where he took written statements from Johnston and Collopy, both of which were in agreement as to the alleged incident (Id.).[3] Fox did not, however, question Franklin to get his side of the story (Id.). Fox then placed a call to his supervisor, Andrew Powers, regarding the appropriate course of action under the circumstances (Id.). Fox concluded that Plaintiff should be arrested for menacing, a violation of Ohio Rev. Code § 2903.22 and a misdemeanor of the fourth degree (Id.). Despite the fact that Franklin's complaint names MUPD Chief Cathryn House, Deputy Chief

---

[3] Fox received a phone call from Defendant Nadine Glaub ("Glaub") later that day, indicating a third person, Eric Estridge, also overheard part of the incident. Fox took Estridge's statement as well, although it was not relied upon at the time the decision was made to arrest Franklin.

Richard Keppler, and MUPD Officer Young Ayers[4] as Defendants, Fox avers that none of them had any involvement in any of the "actions" or "decisions" involving Franklin's arrest (Id.). Fox arrested, handcuffed, and transported Plaintiff to the Miami University Police Department where he was processed, photographed, issued a summons to appear at Butler County Court, and finally released on his own recognizance at approximately 2:45 p.m (Id.).

Shortly after the events at Harris Hall ended, Defendant Freeman Workman, another co-worker of Plaintiff, learned of the dispute and informed Collopy that he had also been involved in an "altercation" with Franklin under similar circumstances earlier in February (Id.). Workman claimed that Franklin instructed him not to use the bathroom while he was cleaning it; when Workman proceeded to do so, Franklin assaulted him, and Workman allegedly sustained an injury to his wrist (Id.). Collopy avers in her deposition that she does "not recall suggesting that...Workman report the...incident to the police" (Id.) Workman proceeded to do precisely that, however (Id.). At about 5:00 p.m. that day, he informed Fox that he had also had an altercation with Franklin (Id.). Fox provided Workman with a form on which to report the incident (Id.). Collopy states that, at Workman's request, she

---

[4] In his Complaint, Franklin refers to a single MUPD Officer "Young Ayers." Based upon the evidence submitted by the Defendants, the Court will assume that there is one Defendant rather than two, as indicated in Plaintiff's Motion.

helped him type his statement, "using as nearly as possible the exact wording" he provided (Id.). Workman then returned to the MUPD station later and submitted the completed form (Id.). On March 6, 2002, Workman also filed a complaint against Franklin in Butler County Court (Id.). Fox was not involved in any subsequent procedures related to Workman's complaint (Id.).

As a result of Plaintiff's arrest, Miami University held a hearing on March 19, 2002, pursuant to Ohio Rev. Code § 3345.22 (doc. 16).[5] The misdemeanor charges against Franklin were still pending (Id.). On March 25, 2002, the hearing referee issued a report and order, finding that Franklin committed the offense of menacing and ordering his suspension (Id.). In accordance with this order, Miami suspended him with pay on March 29, 2002 (Id.). On March 27, 2002, Defendant Nadine Glaub ("Glaub"), Miami's Assistant Director for Personnel Administration in the Department of Housing, sent a memorandum to Defendant Dennis E. Deahl

---

[5] This provision provides, in relevant part:

(A) A student, faculty or staff member, or employee of a college or university that receives any state funds in support thereof, arrested for any offense covered by division (D) of section 3345.23 of the Revised Code shall be afforded a hearing, as provided in this section, to determine whether the person shall be immediately suspended from the college or university. The hearing shall be held within not more than five days after the person's arrest, subject to reasonable continuances for good cause shown, which continuances shall not exceed a total of ten days.

Ohio Rev. Code § 3345.22(A).

-11-

("Deahl") documenting Franklin's disciplinary history and recommending that his employment be terminated (Id.). Franklin contends that none of these alleged incidents had prompted termination in the past, and "many. . . had not prompted any disciplinary action" (Id.).

In response to Glaub's memo, Deahl conducted a pre-disciplinary hearing, at which he accepted testimony regarding the February 28, 2002 incident (Id.). Franklin indicates that as the associated criminal charges were still pending, he was unable to testify at the hearing for fear of incriminating himself (Id.). Franklin further indicates he was unable to have an attorney present (Id.). Defendants dispute that Franklin was unable to testify or defend himself at the hearing, but rather argue that he elected not to testify (doc. 29). Defendants further argue that Plaintiff had the opportunity to request representation through his union AFSCME, but Plaintiff makes no claim that he ever requested an attorney (Id.).

After the hearing, Deahl adopted Glaub's recommendation, and Miami terminated his employment effective April 16, 2002 (doc. 27). Defendants argue Plaintiff had the right to appeal such decision to the court of common pleas, but failed to do so (doc. 29).

A few weeks later, the Butler County Area I Court heard the complaints against Franklin (doc. 27). After taking testimony

-12-

from the witnesses, the judge dismissed the charges (Id.).[6]
Franklin argues that despite this dismissal, he was not reinstated,
an omission he claims is a violation of Ohio Rev. Code § 3345.22(F)
(doc. 27).[7]

**IV. LAW AND ANALYSIS**

### A. Defendants' Argument that Plaintiff Fails to Show A Violation of Any Constitutional Right

#### 1. Plaintiff's Claims Against the Police

As already noted, Franklin has raised federal claims for
deprivation of constitutional rights. Defendants argue that
Plaintiff has failed to show the violation of any such rights under
42 U.S.C. § 1983 (doc. 16). The crux of Defendants' argument is
that Plaintiff's arrest by Defendant Fox was supported by probable
cause (Id.). Citing Ahlers v. Schebil, 188 F.3d 365, 370 (6th Cir.

---

[6] In his briefing, Franklin makes much of the fact that the
original summons against him was dismissed, yet the Defendants
proceeded to obtain another summons in a continuing effort to
harm him. It seems clear, however, on the evidence presented,
that the original summons was dismissed for clerical reasons;
namely, a failure to notarize the summons. The second summons
merely corrected this error.

[7] This provision provides, again in relevant part:

(F) Upon acquittal, or upon any final judicial
determination not resulting in conviction, of the
charges for which a person is suspended pursuant to
this section, the suspension automatically terminates,
and the person suspended shall be reinstated and the
record of the suspension expunged from the person's
college or university record.

Ohio Rev. Code § 3345.22(F).

-13-

1999), Defendants argue that eyewitness identification constitutes probable cause unless there is an apparent reason for the officer to believe that such identification is unreliable (Id.). Consequently, according to Defendants, there was no unlawful arrest or unreasonable seizure. Defendants also argue that Defendants House, Keppler, and Ayers were not involved with effectuating the arrest, that Defendants Workman, Johnston, and Collopy merely reported what they had seen, and Defendants Glaub and Deahl handled Plaintiff's termination according to proper procedure (Id.).

Plaintiff responds that Defendants misread Ahlers, as the case also states that officers cannot turn a blind eye to potentially exculpatory evidence in an effort to pin a crime on someone (doc. 27). Plaintiff argues that Officer Fox failed to get his side of the story and thus turned a blind eye to potentially exculpatory evidence (Id.). Finally, Plaintiff argues that Officer Young Ayers was listed as "assisting officer" in Fox's booking report, and thus there is a factual question as to his involvement in the case (Id.).[8]

---

[8]Plaintiff also contends under Oregon v. Szakovits, 32 Ohio St.2d 271, 291 N.E.2d 742 (1972) and O.R.C. § 2935.03(A)(1), that in order to arrest for a misdemeanor in Ohio, such misdemeanor must be committed in the officer's presence (Id.). Plaintiff argues that O.R.C. 2935.03(B)(1), which carves out exceptions to such rule, does not apply to the offense of menacing (Id.). The Court need not address this argument in depth, as O.R.C. 2901.01 incorporates the menacing statute within its definition of an "offense of violence." O.R.C. 2935.03(B)(1) therefore expressly allows for the warrantless arrest of a suspect for menacing, "an offense of violence," when such arrest is supported by probable

Defendants reply that under <u>Crockett v. Cumberland College</u>, 316 F.3d 571 (6th Cir. 2003), once an officer establishes probable cause, he or she is under no obligation to continue investigating and may instead pursue the arrest of a suspect (doc. 29).  As such, Defendants argue, Defendant Fox was under no obligation to get Plaintiff's side of the story (<u>Id</u>.).  Defendants further argue under <u>United States v. Strickland</u>, 144 F.3d 412 (6th Cir. 1998), that Defendant Fox was not required to possess evidence sufficient to establish guilt beyond a reasonable doubt before arresting Plaintiff, but merely to be able to infer a probability that an illegality has occurred (<u>Id</u>.).

Under the Fourth Amendment to the Federal Constitution, no arrest can be undertaken without probable cause, and citizens have the right to be free from unreasonable seizures.  An arrest without probable cause is an unreasonable seizure.  <u>Dugan v. Brooks</u>, 818 F.2d 513 (6th Cir. 1987).  Probable cause is present when at the time of arrest, the "facts and circumstances within (the officer's) knowledge and of which they have reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense."  <u>Beck v. Ohio</u>, 379 U.S. 89 (1964).  Whether probable cause existed turns on whether the arrest was objectively reasonable under the circumstances.  <u>Criss v. City of Kent</u>, 867 F.

cause.

2d 259, 262 (6th Cir. 1988).  In general, the existence of probable cause in a Section 1983 action presents a jury question, unless there is only one reasonable determination possible.  <u>Yancey v. Carroll County</u>, 876 F.2d 1238, 1243 (6th Cir. 1988).

Under the circumstances of this case the Court finds more than one reasonable determination possible, such that a jury should be presented with the question of whether Defendant Fox had probable cause to arrest Plaintiff.  Ohio's menacing statute prohibits a person from "knowingly caus[ing] another to believe that the offender <u>will</u> cause physical harm to the person or property of another person..."  O.R.C. § 2903.22(A)(emphasis added).  The language of the statute is such that the victim of menacing must be caused to believe the perpetrator has threatened some future harm.  Consequently, even without considering Plaintiff's version of the events, the facts of this case show Defendant Fox knew at the time he arrested Plaintiff that Plaintiff stated he "should" or "ought" to knock Mr. Johnston "the fuck out." A jury could reasonably determine that Plaintiff was letting off steam or "verbalizing anger" but did not express the threat of some future physical harm to Mr. Johnston.  "Should" and "ought" do not equate "will."  "Should" and "ought" are conditional words, albeit, if expressed with a certain body language and tone, might communicate more.  A jury can make the determination.  Particularly under the circumstances of this case, where Plaintiff's anger

-16-

cooled down and he returned to his duties after the dispute, a jury might find lacking Defendant Fox's finding of probable cause for menacing.

The Court does not find persuasive Defendants' reliance on <u>Ahlers v. Schebil</u>, 188 F.3d 365, 370 (6th Cir. 1999), as the issue in this case does not really turn on eyewitness identification or testimony. In this case, even taking the eyewitness statements as true, Defendant Fox may have erred in finding probable cause for menacing. Similarly, Defendants' reliance on <u>Crockett v. Cumberland College</u>, 316 F.3d 571 (6th Cir. 2003), is misplaced as in that case probable cause had been established for rape and a warrant issued from a magistrate judge prior to the arrest. This case differs in that it is unclear whether probable cause for menacing had been established, and Defendant Fox did not seek a warrant with the local judge prior to the arrest. Finally, the facts of <u>United States v. Strickland</u>, 144 F.3d 412 (6th Cir. 1998), in which the arresting officers worked with an informant who led them to a drug transaction the defendant conducted with the informant are simply not on point with the facts of this case. Here Defendant Fox had no prior information about Plaintiff and did not observe the dispute between Plaintiff and Mr. Johnston.

Moreover, for the purposes of a summary judgment motion, the Court must take Plaintiff's account and all inferences drawn

from it as true. <u>Adams v. Metiva</u>, 31 F.3d 375, 382 (6th Cir. 1994).
Plaintiff's account of the dispute differs enough such that his
actions would not necessarily give rise to probable cause for
menacing. A jury might find his account more or less credible than
that of other witnesses. Credibility determinations are in the
province of juries. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,
255 (1986). Where an issue of fact depends upon a credibility
determination, summary judgment is not appropriate. <u>Gray v.
Spillman</u>, 925 F.2d 90, 95 (4th Cir. 1991). As there is more than
one reasonable determination possible concerning the incident that
served as the catalyst for Plaintiff's arrest, and as a jury can
determine what was said, how it was said, and whether Defendant
Fox's arrest of Plaintiff was therefore supported by probable
cause, the Court finds summary judgment inappropriate for Defendant
Fox on Plaintiff's constitutional claim. As for the role of
Defendant Young Ayers as "assisting officer," the Court finds
Plaintiff has offered adequate evidence that Ayers is listed in the
booking report, and therefore played a role in an arrest that may
not have been supported by probable cause. Summary judgment is
therefore inappropriate for Defendant Ayers, as well.

     Defendants also argue that Defendants MUPD Chief House
and Deputy Chief Keppler were not involved with effectuating
Plaintiff's arrest, and liability cannot be imposed on the basis of
<u>respondeat</u> <u>superior</u> (doc. 29). Plaintiff responds that the

-18-

allegations in his pleading should survive a motion to dismiss, "which, as it relates to this issue, is what has been brought before this court by defendants" (doc. 27). The Court does not find Plaintiff's position well-taken, as Defendants filed a motion for summary judgment rather than a motion to dismiss. Summary judgment motions should result in the definition of disputed facts and issues beyond mere notice pleading. Baxter v. Davis, 305 F.3d 486, 490 (6th Cir. 2002). In this case, Plaintiff has proffered no facts showing the involvement of House and Keppler in implicitly authorizing, approving, or knowingly acquiescing to the arrest of Plaintiff. Hicks v. Frey, 992 F.2d 1450, 1455 (6th Cir. 1993). Plaintiff has not offered evidence to contradict the testimony of Defendant Fox, who stated that House and Keppler had no involvement with any of the actions or decisions related to Plaintiff's arrest. The Court concludes that there is no genuine dispute of material fact as to the lack of involvement of House and Keppler, and therefore that summary judgment is appropriate as to Plaintiff's claims against each of them.

### 2. Plaintiff's Claims Against Non-Police

Defendants further argue that Defendants Johnston, Workman, and Collopy merely made truthful reports to the police, and that Glaub and Deahl used appropriate procedures in terminating Plaintiff's employment (doc.16). Defendants argue that none of these individuals deprived Plaintiff of rights, privileges, or

immunities secured by the Constitution or laws of the United States, within the meaning of 42 U.S.C. § 1983 (Id.). Plaintiff responds that these Defendants violated his constitutional right against self-incrimination, his fundamental right to continued employment, and his due process rights in terminating his employment through proceedings pursuant to O.R.C. § 3345.22 (doc. 27). In so responding, however, as Defendants noted in their reply, Plaintiff cites no case law in support of such claims (doc. 29). The Court will address these claims in order.

First, as to Collopy, Johnston, and Workman, Plaintiff argues they triggered the alleged false arrest by a "malicious institution of groundless charges" (doc. 27). Even if the Court would consider Defendants Johnston and Workman as state actors, Plaintiff does not show particularized facts supporting a finding of malice, nor how the actions of these three Defendants arise to the level of a specific constitutional violation. Plaintiff once again seeks to impose the framework of a motion to dismiss, arguing he has stated a claim, rather than showing disputed facts so as to withstand summary judgment. In this instance, where there is no evidence that Defendants Johnston, Workman, and Collopy maliciously conspired together or with the police in order to "get" Plaintiff, any liability premised on violation of the constitutional right to be free of unreasonable seizure must rest on the Defendant police officers who effectuated the arrest, and not those who called the

police for assistance. Simply put, Defendants Johnston, Workman, and Collopy did not arrest or imprison Plaintiff, or deny him of any process. The Court concludes, therefore, that Plaintiff has no federal constitutional claims against these three Defendants.

Plaintiff's remaining theories of constitutional claims are rooted in the circumstances surrounding his suspension and discharge hearings, and thus are directed toward Defendants Glaub and Deahl. Plaintiff argues his constitutional right against self-incrimination was violated when he faced the pre-disciplinary hearing while the criminal charges were still pending against him, and he could not put forward an adequate defense because if he would have spoken, he may have incriminated himself (doc. 27). The Court does not find merit in this argument, because Defendants have proffered evidence showing that his disciplinary hearing involved many other issues besides the altercation with John Johnston, including absenteeism, tardiness, and insubordination. Plaintiff chose to be silent in the face of these many different complaints raised against him, which had nothing to do with the criminal matter pending against him. He could have addressed these issues while not addressing the criminal matter, and thus could have put forward a defense. Defendant Deahl states his decision to terminate Plaintiff was based on these "numerous incidents," and Plaintiff offers no facts to throw this into question, beyond arguing that some of the incidents had not resulted in discipline

in the past.  The Court does not find merit in Plaintiff's claim that his right against self-incrimination is implicated under these facts.

Plaintiff next argues that his fundamental right to continued employment and his due process rights in the termination of his employment have been violated.  The Court's research has yielded meager authority concerning a "fundamental right to continued employment" which might apply to this case, and Plaintiff cited no precedent.  However, property interests protected by the Constitution stem from an independent source, such as state law, and are not created by the Constitution itself.  Sharp v. Lindsey, 285 F.3d 479, 487 (6th Cir. 2002).  Plaintiff cites to O.R.C. § 3345, which in this instance provides for a hearing for state university employees prior to a suspension for a criminal offense, and for reinstatement if the employee is acquitted of the criminal offense.  The Court is satisfied that Plaintiff therefore has due process rights that relate to his termination in this case.  The fundamental requirement of due process is the opportunity to be heard.  Armstrong v. Manzo, 380 U.S. 545, 552 (1965).  In this case, the facts show that Plaintiff received the opportunity to be heard at both his suspension and pre-disciplinary hearings, but that he was terminated prior to the final outcome of the criminal matter.  Plaintiff argues that such termination was improper, because implicit in O.R.C. 3345.23(E), which provides for

-22-

reinstatement subsequent to acquittal, is that the suspension he received should not have been a factor in any disciplinary proceedings (doc. 27). However, the facts show Plaintiff's termination was based on much more than the facts related to his altercation with Johnston and his subsequent suspension, but also upon absenteeism, tardiness, and insubordination. The record shows he received progressive warnings and suspensions. Plaintiff offered no defense as to these charges, which constituted just cause for his termination, regardless of whether his suspension was an incorrect factor in the termination proceeding. Plaintiff himself concedes that O.R.C. § 3345.24 states that nothing in the procedures provided under the statute should be construed to limit the school's ability to take appropriate disciplinary action. A reasonable trier of fact would not find it inappropriate to fire an employee for absenteeism, tardiness, and insubordination. Therefore, Plaintiff's arguments that his due process rights were violated lack merit. Plaintiff was given an opportunity to be heard, and he did not take it. For these reasons, the court grants summary judgment as to the remaining constitutional claims against Defendants Glaub and Deahl.

**B. Defendants' Argument that Claims against Defendants Johnston and Workman Should Be Dismissed Because They Took No Action Under Color of State Law**

Defendants and Plaintiff devote arguments to the question of whether Defendants Johnston and Workman qualify as

-23-

state actors for purposes of Section 1983 (docs. 16 & 27).  The
Court need not reach this issue, as in the above analysis, the
Court has already determined that no constitutional claim against
these two survives summary judgment.

### C. Qualified Immunity

Defendants  all  aver  that  even  if  a  constitutional
violation occurred in Franklin's arrest and subsequent termination,
they  are  entitled  to  qualified  immunity  from  suit  (doc. 16).
Because  the  only  surviving  constitutional  claims  are  those  against
Defendants  Fox  and  Ayers,  the  Court  will  restrict  its  analysis
accordingly.

Qualified immunity protects an official from liability
only in his personal capacity. Owen v. City of Independence, 445
U.S. 622 (1980).  The doctrine protects officials in civil cases
from liability for damages, Rich v. City of Mayfield Heights, 955
F.2d 1092, 1094 (6th Cir. 1992), if their conduct does not "violate
clearly established statutory or constitutional rights of which a
reasonable person would have known." Harlow v. Fitzgerald, 457 U.S.
800, 818-19 (1982).  For a right to be "clearly established," the
contours of the right must have been sufficiently clear so that a
reasonable  official  would  understand  that  his  or  her  conduct
violates that right.  (Id., 475 U.S. at 818-19).  The unlawfulness
of the official's or employee's conduct must be apparent in light
of pre-existing law. Wegener v. City of Covington, 933 F.2d 390,

-24-

392 (6th Cir. 1991).

A right is clearly established when it has been authoritatively decided by the United States Supreme Court, United States Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred. Robinson v. Bibb, 840 F.2d 349, 351 (6th Cir. 1988).  A right may also be considered clearly established if it is so obvious that a reasonable state actor would know what they were doing violated the Constitution or if a closely analogous case establishes that the conduct is unconstitutional.  General statements of the law are not inherently incapable of giving fair and clear warning, and in some instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though "the very action in question has [not] previously been held unlawful" Anderson v. Creighton, 483 U.S. 635, 640 (1987).

To resist a claim of qualified immunity, Plaintiff must overcome two hurdles. "First, the allegations must state a claim of the violation of clearly established law.  Second, the plaintiff must present evidence sufficient to create a genuine issue as to whether the defendant in fact committed the acts that violated the law." Adams, 31 F.3d at 386.

Whether or not qualified immunity exists in a given case is a legal question for the court, unless there is a genuine issue

of material fact regarding whether the defendant actually committed the acts that would violate a clearly established right.  See Monday v. Oullette, 118 F.3d 1099, 1102 (6th Cir. 1997).  The plaintiff bears the ultimate burden of proof to establish that the defendant is not entitled to qualified immunity.  See Wegener v. City of Covington, 933 F.2d 390, 392 (6th Cir. 1991).

Defendants Fox and Ayers argue that their conduct in arresting Plaintiff falls "within the purview of the doctrine of qualified immunity" (doc. 16).  Defendants argue that if a constitutional violation could be shown, the actions of these Defendants were objectively reasonable (Id.).

Clearly the allegations of a false arrest based on the lack of probable cause state the violation of clearly established constitutional law.  As explained above, Plaintiff has presented sufficient evidence to create a genuine issue as to whether Defendants Fox and Ayers arrested him without probable cause for menacing.  Adams, 31 F.3d at 386.  The Court concludes, therefore, that neither Fox nor Ayers are entitled to qualified immunity.

### D.  Eleventh Amendment Immunity for Defendants Miami University and Miami University Police Department

Defendants argue that Miami University and Miami University Police Department are entitled to Eleventh Amendment immunity.  The State of Ohio has clearly set forth in Ohio Revised Code § 2743.02 that it has waived its immunity and consented to be sued only in the Court of Claims.  In so doing, it has left no

-26-

reasonable construction that it has waived its Eleventh Amendment immunity to suit in federal court.  _State of Ohio v. Madeline Marie Nursing Homes_, 694 F.2d 449 (6th Cir. 1982).[9]  When an action is brought against a public institution, the application of the Eleventh Amendment turns on whether that institution can be characterized as an arm or alter ego of the state, or whether it should be treated as a political subdivision of the state.  _Mount Healthy City School District Board of Education v. Doyle_, 429 U.S. 274 (1977).  Municipalities, counties and public school districts do not partake in the state's Eleventh Amendment immunity (_Id_.).  Public colleges and universities, however are arms of their respective state governments, and therefore are immune from lawsuit.  _Hall v. Medical College of Ohio at Toledo_, 742 F.2d 299, 301 (6th Cir. 1984).  Ohio Revised Code § 3345.011 defines "state university" as a public institution of higher education which is a body politic and corporate, and explicitly includes Miami University among public universities in Ohio.  Therefore it is clear to the Court that Miami University and its police department are arms of the state of Ohio, and not a political subdivision.

Because Plaintiff's Complaint does not seek injunctive or declaratory relief against Defendants, it would appear Eleventh

---

[9] Of course if a Plaintiff seeks injunctive relief against officials acting in their official capacities, such Defendants would be considered "persons" under Section 1983.  _Will v. Michigan Department of State Police_, 491 U.S. 58, 71 fn.10.

Amendment immunity applies to his claims. However, Plaintiff argues that his termination was brought in retaliation for a Title VII claim he brought on April 13, 2001. Congress has abrogated the Eleventh Amendment in the context of Title VII cases brought against state entities receiving federal funds. 42 U.S.C. § 2000(d), <u>Fitzpatrick v. Bitzer</u>, 427 U.S. 445 (1978). Thus, the Eleventh Amendment does not bar Plaintiff's claims for retaliation.

The parties argue at length as to whether Plaintiff properly complied with the requirement that he exhaust his administrative remedies in relation to his claim for retaliation. Plaintiff again frames Defendant's motion as a motion to dismiss as to this issue, but fails to proffer any facts at all supporting a retaliation claim. The allegations of the Complaint do not suffice at the summary judgment stage. In light of the fact that the Court has found the University had appropriate reasons for Plaintiff's termination, for which Plaintiff has failed to offer disputed facts, i.e., contesting his absenteeism, etc., there simply is no factual basis for Plaintiff's retaliation claim.

### E. Plaintiff's State Law Claims

In their motion for summary judgment, Defendants also seek the dismissal of all of Plaintiff's state law claims (doc. 16). Defendants contend that when a state employee faces a civil action, exclusive original jurisdiction is vested in the Court of Claims, pursuant to O.R.C. § 2743.02(F), in order to determine if

the employee is entitled to immunity under O.R.C. § 9.86 (<u>Id</u>.). Until the Court of Claims determines whether the employee is entitled to immunity, the Common Pleas Court is without jurisdiction, and under <u>Haynes v. Marshall</u>, 887 F.2d 700, 705 (6th Cir. 1989) the same principle applies to cases brought to federal court (<u>Id</u>.).

Plaintiff argues that Defendants acted maliciously and outside the scope of their employment such that state qualified immunity should not apply (doc. 27). Plaintiff further argues that Defendants waived the right to assert a defense of lack of jurisdiction by waiting until this late state in the litigation (<u>Id</u>.).

The Court finds Defendants' arguments well-taken. Under <u>Haynes</u>, this Court cannot exercise pendent jurisdiction over Plaintiff's state law claims. It is the province of the Ohio Court of Claims to determine whether a state employee, alleged to have acted outside the scope of employment, is entitled to qualified immunity under O.R.C. § 9.86.

**V. CONCLUSION**

Having reviewed this matter, the Court finds the question of whether Defendants Fox and Ayers had probable cause to effectuate the arrest of Plaintiff appropriate for a jury. Although Eleventh Amendment immunity applies to their employer, neither officer is entitled to qualified immunity, and this action

-29-

against them in their personal capacities survives summary judgment. However, the Court finds no genuine issue of material fact as to the process Plaintiff received in his termination, finds he received an opportunity to be heard, and has no basis for a due process claim. Finally, the Court finds it cannot exercise pendent jurisdiction over Plaintiff's state law claims, as exclusive and original jurisdiction over such claims against state employees rests in the Ohio Court of Claims.

Accordingly, the Court DENIES IN PART Defendants' Motion for Summary Judgment as to the Fourth Amendment Claims against Defendants Fox and Ayers, and DENIES Defendants Fox and Ayers qualifed immunity (doc. 16). The Court further GRANTS IN PART such motion to the extent that it dismisses Plaintiff's claims against Defendants House, Keppler, Johnston, Workman, Collopy, Glaub, Deahl, Miami University, and Miami University Police Department (doc. 16). The Court DECLINES to exercise jurisdiction over Plaintiff's state law claims, which must be filed initially in the Ohio Court of Claims. The Court SETS the Final Pretrial Conference for 2:00 P.M. on January 12, 2006, and the three-day jury trial for February 14, 2006.

SO ORDERED.

Dated: September 27, 2005          s/S. Arthur Spiegel
                                   S. Arthur Spiegel
                                   United States Senior District Judge

-30-